BOYCE F. MARTIN, JR., Circuit Judge,
dissenting.
The majority holds “that a jail’s grievance polic[y] need not explicitly provide for all possible scenarios in which a prisoner may seek to file a grievance. Instead, when a reasonable policy is in place, but is silent or vague in a particular circumstance, courts must look to see whether the prisoner has attempted to satisfy the requirements of the policy.” Supra at 223. Because I believe that this holding conflicts with the intent of the Prison Litigation Reform Act and applicable Supreme Court precedent, as well as misapplies the requirement of attempted exhaustion, I respectfully dissent.
The Laurel County Detention Center’s administrative policy instructed prisoners to file grievances by handing them to prison staff in envelopes with no postage and addressed simply to “the Jailer or his designee.” This process would not work anywhere outside the confines of that jail, especially for a former prisoner after being transferred to a different facility. Even if a transferred prisoner wanted to send a grievance through the mail, and had a stamp, envelope, paper, and pen, Laurel County’s process does not provide a mailing address.[1] Therefore, Laurel County’s *227 administrative remedies were not available to Napier when he was transferred to the Marion Adjustment Center unless there was some additional process by which he could have filed a grievance with Laurel County through the Marion facility. However, there was not. The district court expressly observed in a summary judgment hearing that there was no process at the Marion facility, even on paper, by which Napier could file a grievance with Laurel County.
The majority has interpreted availability to require seeking a remedy through any reasonable process not expressly prohibited by a jail’s remedy policy. However, the Supreme Court’s decisions in Jones v. Bock, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007), and Woodford v. Ngo, 548 U.S. 81, 88, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006), demand a different result. Individual jails are responsible for developing administrative remedies and making them available to prisoners. Jones, 549 U.S. at 218, 127 S.Ct. 910. Prisoners are required to “complete the applicable administrative review process in accordance with the applicable procedural rules.” Woodford, 548 U.S. at 88, 126 S.Ct. 2378. Importantly, compliance with those rules provided by the jails is all that is required to satisfy exhaustion. Jones, 549 U.S. at 218, 127 S.Ct. 910. Prisoners have few resources, if any, that are not provided to them by the jails in which they reside. Practically speaking, the only way that compliance can be achieved by men and women who are incarcerated, earn little or no money, and have few or no possessions is if the prison provides them with resources — namely paper, pens, and a delivery system. Therefore, the majority’s interpretation employs an impracticable reading of the Act because it potentially requires prisoners to utilize more resources than the jail provides through its policy.
Additionally, the majority notes that transfer from one facility to another does not generally render grievance procedures unavailable. However, the only cases that the majority cites for this proposition are factually distinguishable. Thus, their rationales are not persuasive here. Furthermore, they are both unpublished district court decisions. In the first case, Blakey v. Beckstrom, No. 06-163-HRW, 2007 WL 204005, at *2 (E.D.Ky. Jan. 24, 2007), the prisoner had been transferred between two facilities run by the Kentucky Department of Corrections. In that situation, the district court held that the Department’s grievance policy was available to the prisoner at both facilities. Id. In the second case, Jackson v. Walker, No. 6:07-230-DCR, 2007 WL 2344938, at *5-6 (E.D.Ky. Aug. 14, 2007), the same situation applied to a prisoner transferred between two federal facilities, both of which used the nationwide Bureau of Prisons grievance process employed by all federal facilities. These conclusions make sense. In both eases, the former and current facilities were managed by the same entity. They shared policies and practices. Ultimately, they would easily be prepared to process grievances between each other from transferred prisoners, and the district courts found as much.
Conversely, the Marion facility was privately owned and operated, unlike the public Laurel County facility. This is wholly unlike two facilities operated by the same *228 entity that employ system-wide policies. Indeed, I believe that where two separate facilities do not work together to provide the former facility’s remedies at the new facility, the former facility’s administrative processes are no longer available to the transferred prisoner. See, e.g., Bradley v. Washington, 441 F.Supp.2d 97, 102-03 (D.D.C.2006) (prisoner who filed suit against officials of Washington, D.C. jail was not required to exhaust the jail’s administrative remedies after he had been transferred to two different federal facilities because the jail’s grievance policy did not provide for grievance submission from outside the facility). Therefore, Laurel County’s administrative processes were not available to Napier at the Marion facility.
Finally, the majority’s holding misapplies to this case the doctrine of attempted exhaustion. The majority cites multiple cases for the proposition that Napier had to at least attempt to exhaust Laurel County’s administrative remedies in order to satisfy the exhaustion requirement. In those cases, however, the courts were not asked to answer the same threshold question before us: whether an administrative process was available. Rather, in those cases, the courts had already passed that threshold and focused on the different issue of whether exhaustion of an available process could be excused for some other reason such as futility or prison interference. Although the majority hints that Laurel County’s administrative process was available to Napier, it never expressly decides the issue. Instead, it bypasses the threshold, categorizing the process as “silent or vague in [Napier’s] circumstance.” Supra at 223. I believe we should only reach the issue of attempted exhaustion if we first expressly determine that administrative processes were available.[2] And because I believe no processes were available here except for prisoners confined within Laurel County, we should not reach the issue of whether Napier should have attempted exhaustion.
Accordingly, I respectfully dissent.

. The majority and the district court were reassured in their holdings because one former prisoner of Laurel County successfully mailed a grievance to Laurel County from another facility. See supra at 226-27 & n. 5. When fleshed out, however, this fact only detracts from their holdings. That former prisoner mailed his grievance only after he received assistance from his family and instructions to do so from Napier’s attorney. *227 Napier’s attorney provided this instruction to this non-client only because the district court in Napier’s case indicated during a summary judgment hearing that it seemed possible that Napier could have mailed a grievance to comply with Laurel County’s policy. This extraordinary situation illustrates how prisoners of ordinary means in ordinary situations would not have known to mail a grievance or had the ability to do so.

. The majority states that I “insistí] that there is no duty for prisoners to attempt to exhaust when ‘availability’ is even in question, but only when 'processes were available’ and the issue is ‘futility.’ " Supra at 224. The last clause of that passage limits my opinion beyond what I have proposed. I believe that we should only reach the issue of attempted exhaustion in cases where we first find that administrative processes were available. Yet, the majority suggests that I would further reduce the sampling to cases where we first find that administrative processes were available and futility was an issue. That is not so.